UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DALLAS SCOTT HERRING,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. SA CV 16-01230-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Dallas Scott Herring ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an application for SSI on May 3, 2013, alleging disability beginning on April 15, 2004. Administrative Record ("AR") 203-08. After his application was denied, he requested a hearing before an administrative law judge ("ALJ"). AR 83-85. At a November 7, 2013 hearing, the ALJ heard testimony by a vocational expert ("VE"), an impartial medical expert, and Plaintiff, who was represented by counsel. AR 38-54.

In a written decision issued January 15, 2015, the ALJ denied Plaintiff's claim for benefits. AR 15-37. He found that Plaintiff had medically-determinable severe impairments consisting of degenerative disc disease, degenerative arthritis of the lumbar spine, and bipolar disorder. AR 20. He found that despite those impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: he can "occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; he can stand and walk with normal breaks for a total of six hours of an eight-hour day; he can sit with normal breaks for a total of six hours of an eight-hour day; he is limited to simple routine tasks with a reasoning level of 3 or below; object oriented so no work with the general public, in a habitual setting; and no safety related operations." AR 23.

Based on the VE's testimony, the ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform the requirements of representative occupations such as packer, with "approximately 344,500 jobs available nationally," or assembler, with "approximately 83,000 jobs available in the national economy." AR 32. The ALJ found that because Plaintiff could perform jobs that existed in significant numbers in the national economy, he was not disabled. AR 32-33.

///

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. AR 1-7; see 20 C.F.R. § 416.1481. Plaintiff then sought judicial review in this Court. Dkt. 1.

## II.
## DISCUSSION

Plaintiff argues that (1) the ALJ failed to properly consider two physicians' opinions on Plaintiff's mental limitations and (2) the VE's job availability estimates conflict with County Business Patterns ("CBP") data. See Joint Stipulation ("JS") at 4. For the reasons discussed below, the Court finds that the ALJ did not err.

**A.  Evidence of Mental Limitations**

Plaintiff claims that the ALJ improperly gave greater weight to the opinion of the testifying, impartial medical expert than the opinions of an examining psychologist and a state-agency consulting psychologist. See JS at 10-12.

    **1.  Relevant Facts**

        a.  Dr. Howard S. Leizer: State-Agency Consulting Psychologist

Dr. Leizer was the state-agency psychologist who reviewed Plaintiff's medical records when Plaintiff's application was initially denied. AR 66. Regarding social interaction limitations, Dr. Leizer determined that Plaintiff was not significantly limited in his ability to ask simple questions, request assistance, and maintain socially appropriate behavior. Id. He found that Plaintiff was moderately limited in his ability to interact appropriately with the general public, accept instructions, respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them. Id. In sum, he found that Plaintiff "would be able to interact with the public only for brief periods. Criticism from supervisors would likely exacerbate

[Plaintiff's] symptoms. His best performance would be realized in a well-spaced location with only a few co-workers." Id.

Regarding adaptation limitations, Dr. Leizer found that Plaintiff was not significantly limited in his ability to be aware of normal hazards, take appropriate precautions, travel in unfamiliar places, and use public transportation; he found that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting, set realistic goals, and make plans independently of others. Id. In sum, he found that Plaintiff "would need assistance in adapting to change, unless infrequent or implemented gradually." Id.

    b. Dr. Sohini P. Parikh: Examining Psychiatrist

Dr. Parikh conducted a full psychiatric examination of Plaintiff. AR 336-43. She found that "from a psychiatric standpoint, [Plaintiff] did not seem to have moderate impairment in the ability to reason and make social, occupational, and personal adjustments." AR 342. Further, she found no mental limitations in social functioning, daily activities, concentration, persistence, pace, and emotional deterioration in work-like situations. AR 342. Dr. Parikh found moderate impairments in Plaintiff's ability to understand, carry out, and remember both simple and complex instructions, respond to coworkers, supervisors, and the general public, respond appropriately to usual work situations, and deal with changes in a routine work setting. AR 342-43. Additionally, she found that Plaintiff had a good relationship with family and friends, was cooperative during the examination, was able to focus attention, had normal speech patterns, and could follow simple instructions, although his attention was poor and his mood was depressed. AR 338-40. She noted that in addition to her own examination, she had reviewed records from another physician's examination. AR 337.

*///*

### c. Dr. Joseph Malancharuvil: Impartial Medical Expert

Dr. Malancharuvil is a licensed clinical psychologist. AR 42. At Plaintiff's hearing, Dr. Malancharuvil testified that Plaintiff has no limitations of daily living, mild-to-moderate limitations in social functioning, and "retains the capacity for simple work, up to four or five step instructions in a routine setting." AR 43-44. Dr. Malancharuvil came to this conclusion based on a review of the entire record. AR 42-45. He disagreed with an assessment by Plaintiff's treating physician that Plaintiff could not work steadily because it contradicted Dr. Parikh's psychiatric evaluation, which found that Plaintiff had moderate, but not marked, functional limitations. AR 42-45. He further noted that Plaintiff has a recorded history of faking symptoms and should have been able to continue taking his medication. AR 43-45. Dr. Malancharuvil noted that Plaintiff "has a word problem and . . . some bipolar features to his mental status. But [in] other ways, his mental status is intact." AR 46. He therefore concluded that Plaintiff could consistently work without being frequently absent. AR 46.

### d. ALJ Decision

The ALJ found that Plaintiff's mental impairments did not constitute a disability despite his moderate social limitations. AR 21-22. He noted that "[t]he opinions of the impartial psychological medical expert, independent psychiatric consultative examiner, and the [state-agency] psychological consultants support this finding" and were consistent with the record. AR 22, 27-28. The ALJ also noted that on a daily basis, Plaintiff finds food, panhandles, travels alone, does not bother others, gets along with authority figures, and has never been dismissed from a job because of his trouble with other people. AR 22. The ALJ's RFC to perform light work with some limitations was "supported by the opinions of the impartial medical expert, independent consultative examiners and the [state-agency] medical

5

consultants, the treatment record, the claimant's [activities of daily living], the Social Security Administration field office interviewer's observations, and the claimant's demeanor and testimony at the hearing." AR 31.

The ALJ assessed the opinions of Dr. Malancharuvil, Dr. Parikh, and Dr. Leizer as follows. The ALJ gave Dr. Malancharuvil's opinion "great weight because he is an impartial medical expert, he is a licensed clinical psychologist, he reviewed the [Plaintiff's] records, and he is familiar with the Social Security Administration's precise disability guidelines. More importantly, his opinion is consistent with the medical record as a whole." AR 27. The ALJ gave "Dr. Parikh's opinion significant weight (less than great, but more than substantial or little) because she is an independent consultative examiner, she examined the [Plaintiff], she is familiar with the Social Security Administration's precise disability guidelines, and her opinion is consistent with her exam findings and the medical evidence record as a whole. Dr. Parikh's opinion is reasonable but given less weight than Dr. Malancharuvil's opinion because Dr. Malancharuvil is an impartial medical expert who reviewed the entire medical record." AR 28. Finally, the ALJ gave Dr. Leizer's opinions "substantial weight because he reviewed the [Plaintiff's] records, he is familiar with the Social Security Administration's precise disability guidelines, and his opinion is consistent with the medical record as a whole. His opinion is reasonable based on the medical evidence record but it is given less weight because he is not an impartial medical expert and he did not examine the claimant." AR 28.

**2.    Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c); Lester v.

Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[2] The weight accorded to each physician's opinion depends on several factors, including whether the opinion is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the degree to which it provides supporting explanations that consider all pertinent evidence in a Plaintiff's claim. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830.

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 416.927 that was in effect at the time of the ALJ's August 2014 decision.

examining medical professional only for 'clear and convincing' reasons." Nicholas v. Colvin, No. 13-2551, 2014 WL 5242584, at *2 (E.D. Cal. Oct. 14, 2014) (quoting Lester, 81 F.3d at 830-31); see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

"In contrast, a contradicted opinion of a treating or examining professional may be rejected for 'specific and legitimate' reasons that are supported by substantial evidence." Nicholas, 2014 WL 5242584, at *2 (citation omitted). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Morgan v. Comm'r, Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (testifying medical-expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) (as amended) (noting that the findings of a nontreating physician can amount to substantial evidence so long as other evidence in the record supports those findings).

### 3. Analysis

Plaintiff claims that the ALJ "rejected" without explanation Dr. Parikh's and Dr. Leizer's findings of moderate limitations in social functioning and adaptation at work in favor of Dr. Malancharuvil's finding of no such limitations. JS at 10, 18. Contrary to Plaintiff's claim, the ALJ did not reject the opinions of Dr. Parikh and Dr. Leizer. He simply gave them less weight. See AR 28. The ALJ gave Dr. Parikh's opinion "significant weight" and formulated an RFC incorporating her findings of moderate limitations in

following simple instructions, dealing with coworkers and the public, and responding to changes in work situations. AR 27. The RFC limiting Plaintiff to simple, routine tasks in a habitual setting with no work with the general public also incorporated Dr. Leizer's findings of moderate impairment in responding to changes at work and making plans independently of others.

The physicians' opinions do not contain any major inconsistencies about Plaintiff's social functioning and adaptation limitations. The ALJ concluded that Plaintiff could not perform more than simple, routine tasks away from the general public. This conclusion is consistent with all three medical opinions. See Lester, 81 F.3d at 830. Additionally, the ALJ's decision to give less weight to Dr. Parikh's and Dr. Leizer's opinions accrued to Plaintiff's benefit. Dr. Parikh found no limitations in social functioning while Dr. Malancharuvil found mild-to-moderate limitations. Dr. Malancharuvil's finding likely contributed to the ALJ's decision that Plaintiff could not perform work with the general public.

To the extent that the ALJ appears to have discredited Dr. Parikh's opinion, he did so only where Dr. Malancharuvil's opinion contradicted it. Dr. Malancharuvil's assessment that Plaintiff's mental status was largely intact such that he could work consistently does not seamlessly align with Dr. Parikh's opinion that Plaintiff had moderate impairments in his ability to carry out simple instructions and respond appropriately to the usual work situations. See AR 46, 337. Yet where their opinions differed, Dr. Malancharuvil's findings were consistent with the record as a whole and took into account Plaintiff's well-documented history of faking symptoms and inexplicable failure to take medication or undergo consistent treatment. See AR 43-45.

Moreover, the record shows Dr. Parikh did not have access to this history when conducting her examination. As a result, the ALJ discounted her opinion "in reliance on the testimony of a nonexamining advisor," Dr.

Malancharuvil, whose opinion was "supported by other evidence in the record and [is] consistent with it." See Andrews, 53 F.3d at 1041. The ALJ thus gave "specific and legitimate" reasons for giving Dr. Malancharuvil's opinions greater weight. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). Dr. Malancharuvil's opinion also benefits from the fact that greater weight may be given to a nonexamining doctor who is subject to cross-examination, as he was during Plaintiff's hearing. Andrews, 53 F.3d at 1042. Thus, his opinion "need not be discounted and may serve as substantial evidence." Id.

As to Plaintiff's claim that Dr. Leizer's opinion warranted greater weight than Dr. Malancharuvil's or Dr. Parikh's opinions, nothing in the record supports this conclusion. Unlike Dr. Parikh, Dr. Leizer did not examine Plaintiff, and examining physicians are generally entitled to more weight. Lester, 81 F.3d at 830. The ALJ followed the general rule when weighing the two medical opinions. AR 28. The ALJ also explained that she gave Dr. Leizer's opinion less weight than Dr. Malancharuvil's opinion because he was not an impartial medical expert. AR 28. Substantial evidence within the record supported the decision, including Plaintiff's medical records, testimony, and the opinions of several other doctors.

Even if giving Dr. Malancharuvil's opinion greater weight than Dr. Parikh's opinion had not been supported by substantial evidence, any error was harmless. Plaintiff's RFC was for simple and routine tasks with no public interaction, to be performed in a habitual setting. This takes into account the moderate limitations found by both Dr. Parikh and Dr. Leizer. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (finding that an RFC limiting a plaintiff to "simple tasks" adequately translated the plaintiff's "moderate" limitations in adaptation and concentration); Lawhorn v. Colvin, 609 Fed. App'x 449, 450 (9th Cir. 2015) (finding that RFC for simple, routine

tasks encompassed medical opinion that plaintiff could perform both simple, repetitive tasks and detailed, complex ones despite difficulty concentrating).

In sum, the ALJ's RFC assessment was supported by substantial evidence. Remand is not warranted on this basis.

**B.  VE Testimony Regarding Job Numbers**

Plaintiff contends that the ALJ improperly accepted the VE's testimony that he would be able to perform unskilled positions of light exertional level such as packer/hand packager (DOT 920.687-166), which has "approximately 344,500 jobs available nationally," and assembler (DOT 701.687-010), which has "approximately 82,000 jobs available in the national economy." AR 32.

**1.  Relevant Facts**

At Plaintiff's hearing, the VE testified that a hypothetical person with Plaintiff's RFC could perform representative jobs such as packer or assembler. AR 52-53. He stated that there were approximately 344,500 packer jobs and 83,000 assembler jobs nationally and that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). AR 53. Plaintiff's attorney did not challenge the VE's job numbers, ask about their source, or present any alternative job data.

In his written decision, the ALJ determined that under SSR 00-4P, the VE's testimony was "consistent with the information contained in the [DOT] and the record." AR 32. Based on the VE's testimony, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id.

**2.  Applicable Law**

At step five of the sequential evaluation process, an ALJ must determine whether a disability claimant who cannot perform past relevant work is nevertheless capable of performing other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a). The DOT is the

11

best source of information about how a job is generally performed. Carmickle, 533 F.3d at 1166; see also 20 C.F.R. § 416.966(d)(1) (noting that the Social Security Administration takes administrative notice of DOT). To rely on a VE's testimony regarding the requirements of a particular job, an ALJ must first inquire as to whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, *4 (Dec. 4, 2000)). When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).

Claimants may challenge an ALJ's acceptance of a VE's testimony, but "they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended). Although a plaintiff may challenge the reliability or evidentiary basis for a VE's job numbers, "when a claimant fails entirely to challenge a [VE's] job numbers during administrative proceedings before the agency, the claimant waives such a challenge on appeal, at least when the claimant is represented by counsel." Shaibi v. Berryhill, 870 F.3d 874, 881 (9th Cir. 2017). This "encompasses challenges based on an alleged conflict with alternative job numbers gleaned from the CBP," which is published by the U.S. Census Bureau. Id.; see also Valenzuela v. Colvin, No. 12-0754, 2013 WL 2285232, at *3 (C.D. Cal. May 23, 2013) (rejecting argument that ALJ erred in relying on VE's job estimate testimony in part because "plaintiff waited until after the ALJ's adverse decision to submit alternative jobs data").

### 3. Analysis

Plaintiff argues that the ALJ erred in relying on the VE's testimony that the representative jobs existed in significant numbers in the national economy. See JS at 21. He "requests that the court take judicial notice of administratively

noticed facts pursuant to 20 CFR § 416.966(d)." Dkt. 20 at 1. Plaintiff attached CBP data indicating that the cutlery and handtool manufacturing industry has 34,970 paid employees and the footwear manufacturing industry has 11,414 paid employees as of 2014. Dkt. 20 at 4, 9. Noting that the DOT describes the two representative occupations as occurring in these industries, Plaintiff suggests that the VE's job numbers are mathematically impossible and "no reasonable person would believe that the national economy supports 83,000 assemblers of cutlery and hardware tools when the entire cutlery and hardware industry employees 34,970 people in all designations." JS at 19-21.

Plaintiff failed to raise this issue or submit the CBP data to the Social Security Administration at any point during administrative proceedings. Because Plaintiff was represented by counsel yet failed to address any inconsistent job numbers, he was "waive[d] such a challenge on appeal." Shaibi, 870 F.3d at 881. Thus, remand is not warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: October 16, 2017

  _____
  DOUGLAS F. McCORMICK
  United States Magistrate Judge